# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JOSHUA M BALENTINE,** *et al.*, | ) | |
| Plaintiffs | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **3:16-cv-01654-AKK** |
| **DIRECT GENERAL INSURANCE COMPANY,** | ) | |
| Defendant, | ) | |
| _____ | ) | |
| **DIRECT GENERAL INSURANCE COMPANY,** | ) | |
| **Third Party Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| **CYNTHIA GLOVER** | ) | |
| **Third Party Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Joshua Balentine and Nichole Meyers were injured in a motorcycle accident and filed a claim for uninsured motorist benefits with Direct General Insurance Company. Doc. 1. After Direct General denied the claim, doc. 28-1, Balentine and Meyers filed suit in state court, doc. 1-4, which Direct General removed to this court based on diversity jurisdiction, doc. 1. Direct General now moves for summary judgment, arguing that it is entitled to rescind the policy in question because the insured's application for insurance failed to include purportedly

material information.  Doc. 26.  The motion is fully briefed and ripe for adjudication.  Docs. 26 & 28.  After reading the briefs, viewing the evidence, and considering the relevant law, the court finds that the motion is due to be denied.

## I.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial."  *Id.* at 324 (internal quotations omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving

party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

## II.    FACTUAL BACKGROUND

Direct General issued an auto insurance policy to Cynthia Glover that contained uninsured motorist coverage. Doc. 26-2. Glover signed a one-page application which contains an acknowledgement that "ALL PERSONS AGES 14 AND OLDER WHO LIVE WITH ME HAVE BEEN REPORTED TO THE COMPANY." Doc. 26-2 at 7. The application also included an agreement that the policy "may be null and void and no coverage provided if the information provided  in this application is false or misleading and would materially affect acceptance or rating of the risk by the Company." *Id.*

Sometime after Glover obtained the policy, her son, Balentine, and his girlfriend, Meyers, were riding Balentine's motorcycle when an allegedly negligent driver collided with them, causing them serious injuries. Docs. 1; 1-4. Balentine and Meyers filed suit in state court against the driver and the driver's insurance company, Progressive Specialty Insurance Company. Doc. 1-4. Progressive paid Balentine and Meyers $25,000 each, which represented the full liability limit available under the driver's policy. Doc. 1-9. Because their bills totaled more than $100,000, Balentine and Meyers filed an uninsured motorist claim with Direct General, asserting that they qualified as "family members" under Glover's policy. Doc. 1-1 at 4. Direct General denied the claim after learning that Glover had failed to disclose that Balentine was living with Glover when she applied for the policy, docs. 26-1 at 3; 28-1 at 1, and now seeks to rescind the policy.

## III. ANALYSIS

Alabama law regulates insurance policies, and "where a statute governs the rights, obligations, and duties of an insurer or insured, that statute is read into and becomes a part of the insurance contract." *Thomas v. Liberty Nat. Life Ins. Co.*, 368 So. 2d 254, 258 (Ala. 1979). The statute at issue here states, in relevant part, that:

> Misrepresentations, omissions, concealment of facts and incorrect statements [in an application for insurance] shall not prevent a recovery under the policy or contract unless either:

> (1) Fraudulent;
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
> (3) The insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7. A showing of fraud is not necessary. "[E]ven if innocently made, an incorrect statement that is material to the risk assumed by the insurer or that would have caused the insurer in good faith not to issue the policy in the manner that it did provides a basis for the insurer to avoid the policy." *Alfa Life Ins. Corp. v. Lewis*, 910 So. 2d 757, 762 (Ala. 2005).

Direct General argues that Glover's failure to disclose that Balentine was residing with her at the time she applied for the policy constitutes a material omission entitling it to rescind the policy under §§ 27-14-7(a)(2) or (3). Doc. 26. Balentine and Meyers disagree, contending that (1) the materiality of the omission is a jury question; and (2) Direct General has offered no evidence that it universally applies its own guidelines to claims involving similar omissions.[1] Doc. 28. The court addresses these contentions below.

---

[1] Balentine and Meyers also contend that the application for insurance is inconsistent with the language of the policy itself. Doc. 28. However, this argument is unavailing, as

## A. The materiality of the omission is a jury question.

To prove its rescission claim under Ala. Code § 27-14-7(a)(2), Direct General must demonstrate that Glover's failure to list Balentine as a resident in her household was a material omission as a matter of law. To be sure, applicants for insurance have a duty to read what they sign, and insurers have a "right to rely on the representations in the application." *Nationwide Mut. Fire Ins. Co. v. Pabon*, 903 So. 2d 759, 767 (Ala. 2004). Nonetheless, omissions only trigger the right to rescission where they are material, and the materiality of an omission in a policy application "is almost invariably a question for the jury, which is entitled to consider the factual context in which the determination is to be made." *First Fin. Ins. Co. v. Tillery*, 626 So. 2d 1252, 1255 (Ala. 1993) (internal quotations omitted). Some misrepresentations, however, "increase the risk of loss as a matter of law and are therefore material to the issuance of the policy." *Lewis*, 910 So. 2d at 762. For example, failing to disclose a congestive heart failure diagnosis on an application for life insurance constitutes a material omission as a matter of law because a policy holder's heart condition increases an insurer's risk. *Id.* at 761-63. In contrast, misstating the location at which an insured will garage an automobile "is merely a statement of expectation, . . . and as such is not material to the acceptance of the risk" for an auto insurance policy. *Alabama Farm Bureau Mut. Ins. Co. v.*

*Davis*, 354 So. 2d 15, 20 (Ala. Civ. App. 1978) ("[T]he insurer's liability of risk must stem from the use to which a car is put rather than where it is garaged.").

Here, the only evidence of materiality that Direct General offers is an affidavit from an underwriter stating that Direct General would not have issued the policy had it known of the omission. Docs. 26 at 8; 26-1 at 3-4. However, an insurer cannot "avoid coverage simply because its own employee testified that the company would not have undertaken the risk had it known the truth as to the particular fact." *Tillery*, 626 So. 2d at 1255. *See also Bennett v. Mut. of Omaha Ins. Co.*, 976 F.2d 659, 661 (11th Cir. 1992) ("[T]he uncontradicted testimony of an insurance company's underwriter that a misrepresentation was material and that the company in good faith would not have issued the policy as written, is not necessarily dispositive."). To prove materiality, Direct General needs more evidence than a "self-serving evaluation by an insurers employee." *Nationwide Mut. Fire Ins. Co. v. Guster Law Firm, LLC*, 944 F. Supp. 2d 1116, 1128 (N.D. Ala. 2013).

For example, the court in *Integon Nat. Ins. Co. v. MT & R Enterprises, Inc.* granted summary judgment for the insurer where the insured failed to list one of the employees who would drive the vehicles in its application for auto insurance. No. 4:10-CV-02021-HGD, 2012 WL 6043504, at *3 (N.D. Ala. Nov. 8, 2012), *report and recommendation adopted,* No. 4:10-CV-02021-AKK, 2012 WL

6043518 (N.D. Ala. Nov. 29, 2012). The insurer offered evidence that it had a policy of running background checks on all listed drivers, and that the driver in question had a suspended driver's license, which the insurer likely would have discovered had the insured listed him in its application. *Id.* Because insuring a driver with a suspended license increases the insurer's risk, the court found that the omission was material as a matter of law. *Id.*

Based on the record in this case, Direct General has failed to produce any similar evidence at this juncture to show that Balentine's presence in the household increased its risk of liability. Consequently, because of the strong presumption that materiality is a jury question, *see Tillery*, 626 So. 2d at 1255, Direct General has not met its burden to show it is entitled to rescind the policy as a matter of law.

**B. There is no evidence in the record that Direct General has a policy or practice of denying claims based on similar omissions.**

Even where a misrepresentation or omission is not material under § 27-14-7(a)(2), an insurer is still entitled to rescission under § 27-14-7(a)(3) if it can prove that, had it known the facts, it "in good faith would either not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for," or would have limited the amount of coverage. Ala. Code § 27-14-7. Under this Section, "the only question is the good faith of the insurer in refusing to issue the policy." *Henson v. Celtic Life Ins. Co.*, 621 So. 2d 1268, 1275

(Ala. 1993). To prove good faith, the insurer needs evidence that it "universally applie[s]" its underwriting guidelines in dealing with similar misrepresentations. *Id.* Typically, this requires official documentation of the insurer's underwriting guidelines. *See id.* However, "testimony articulating a rational basis for the policy," though not dispositive, is also "relevant evidence in a factual determination of whether the underwriting policy existed in the first place." *Mega Life And Health Ins. Co. v. Pieniozek*, 516 F.3d 985, 990–91 (11th Cir. 2008).

Direct General has offered no evidence that it has a universally applied policy or practice of denying coverage for similar omissions. Nor does its underwriter's affidavit articulate any rational basis for rescinding Glover's policy.[2] *See* doc. 26-1. In light of Direct General's failure to prove that it universally applies a uniform set of underwriting standards for similar omissions, a jury must decide whether Direct General—acting in good faith and armed with the knowledge that Balentine was living in Glover's home—would have declined to issue the policy, charged Glover a higher premium, or limited her coverage.

---

[2] Indeed, even if the court itself "can envision a rational basis" for denying or limiting coverage based on an additional household member, Direct General is still required to produce evidence of universal application of the guidelines to succeed under § 27-14-7(a)(3). *Pieniozek*, 516 F.3d at 990; *see also Baker v. Travelers Ins. Co.*, 207 F. Supp. 3d 1246, 1253 (N.D. Ala. 2016) ("While Travelers' assertions are logically sound, Travelers failed to provide evidence of a universal application of its underwriting policy or similar situations in which it denied coverage. Therefore, the court cannot conclude as a matter of law that Travelers in good faith would not have issued the policy.").

## CONCLUSION AND ORDER

Consistent with this opinion, the motion for summary judgment, doc. 26, is

**DENIED.**

DONE the **19th** day of April, 2018.

 

 

 

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE